# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI
# EASTERN DIVISION

SHELIA SHUMPERT                                                                    PLAINTIFF

V.                                                              CAUSE NO.: 1:06CV327-SA-JAD

JIM JOHNSON, in his official
capacity as Sheriff of Lee County, Mississippi                                     DEFENDANT

## JUDGMENT

This cause comes on consideration following a jury's verdict in the case sub judice, and the Court has taken part of the jury verdict under advisement. After hearing the testimony at trial, and considering the post-trial briefs, the Court is prepared to rule.

*BACKGROUND*

On November 25, 2006, Plaintiff Sheila Shumpert was working at the Lee County Juvenile Detention Center when she noticed approximately six Tupelo police cruisers at the Lee County Jail. Plaintiff entered the Lee County Jail and observed several Tupelo police officers in the jail cell with an arrestee, Larry Waites. She observed what appeared to be an officer hitting Waites while other officers held the arrestee. Shumpert testified that she heard Waites screaming for the beating to stop. Shumpert testified that based on things she saw and heard, she was concerned about Waites' safety.

Shumpert immediately reported the incident to Supervisor Stuart Dodds, and later reported the incident to Major Anthony Hill with the Tupelo Police Department. According to Shumpert, in their conversation, Hill gave her advice to "tell the truth and follow [her] heart." Shumpert testified that in hopes of preventing Larry Waites from being further harmed, she contacted Tupelo city councilwoman Nettie Davis, who contacted Kimla Johnson, an attorney, who, in turn, contacted Plaintiff. At Davis' request, Plaintiff met with Kimla Johnson and

informed the attorney about the incident. Subsequently, at the request of Kimla Johnson, Plaintiff prepared an affidavit describing what she had observed during the Waites' assault.

Three days after the assault, Shumpert met with the Jail Administrator, Tony Carleton and discussed the incident with him and informed him that an attorney had contacted her. After Captain Carleton asked Shumpert if she told the attorney what she had just told him, Carleton stated that Sheriff Johnson was going to be mad at her. When Shumpert asked Carleton why, Carleton mentioned that contact with an attorney about such an incident was a violation of a policy. Carleton then advised Shumpert that he would have to report this to Sheriff Jim Johnson.

Sheriff Johnson testified that Captain Tony Carleton and Sergeant Steve White "brought this to my attention, that this policy[1] had been violated." At trial, when counsel for Plaintiff asked, "and you never looked into - - you never investigated the incidents other than what he told you," Sheriff Johnson responded, "No." On November 30, 2006, Shumpert was notified that she was terminated because she violated the Lee County Sheriff's Department policy in discussing the alleged incident with attorney Kimla Johnson without first securing the sheriff's authorization to do so. Shumpert brought suit against the Sheriff alleging that she was terminated for exercising her First Amendment rights.

The trial concluded on June 27, 2008. On that day, the jury rendered a verdict finding for the Plaintiff Shelia Shumpert $34,000.

Following the verdict, the Court propounded to the jury the following interrogatories:

---

[1] The policy in question states, "interviews between a deputy or employee and a complainant's (criminal) or plaintiff's (civil) attorney about a cause arising when the deputy's employment by the department will be done only in the presence of or with the knowledge and consent of the sheriff or his designee." The policy language is unclear; however, Sheriff Johnson explained at trial that the policy is intended to cover interviews between an employee and an attorney unless the sheriff or his designee is present.

1. Did Plaintiff prove that the exercise of her First Amendment speech did not materially and substantially interfere with the efficient operation of the Sheriff's Department?

   To which, the jury responded, "Yes."

2. Did plaintiff prove that she had a significant interest in speaking to attorney Kimla Johnson without a sheriff's department representative present?

   To which the jury responded, "Yes."

3. Did plaintiff prove that the sheriff did not have a significant interest in prohibiting his employees from speaking to private attorneys without notifying him and allowing a representative to be present?

   To which the jury responded, "No."

4. Did the plaintiff prove that the defendant, Jim Johnson, in his official capacity as Sheriff of Lee County, did not have a significant interest in enforcing his policy under the facts of the case?

   To which the jury responded, "No."

Following the trial, the Court ordered each party to submit a post-trial brief to address the balancing of an employee's right to free speech on matters of public concern against the employer's need for providing efficient public service. See Pickering v. Board of Educ., 391 U.S. 563, 572-73, 88 S. Ct. 1731, 20 L. Ed. 2d 811 (1968) ("Pickering balancing test").

*DISCUSSION*

At the outset, the Court notes that the jury's verdict and the answers to the interrogatories are consistent; however, the Court has evaluated the answers to the interrogatories as advisory only. See Bryson v. City of Waycross, 888 F.2d 1562, 1566 (11th Cir. 1989) (district court's

interrogatories submitted <u>Pickering</u> issue to jury, but district court properly considered jury's responses only as advisory).

"In order for a public employee to prevail on a First Amendment retaliation claim, she must prove that (1) she suffered an adverse employment decision; (2) she was engaged in protected activity; and (3) the requisite causal relationship between the two existed." <u>Jordan v. Ector County</u>, 516 F.3d 290, 295 (5th Cir. 2008). The parties concede that an adverse employment action occurred, i.e., Shumpert was terminated. Furthermore, the jury was instructed and apparently found that Shumpert was fired on the basis of the content of her speech, thus establishing the requisite causal relationship between the adverse employment decision and her protected activity.[2]

To determine whether the First Amendment protects a public employee's speech, the Court must employ a two-part test. <u>Id</u>. First, "the employee's speech needs to address a matter of public concern." <u>Id</u>. Second, the Court must engage in the <u>Pickering</u> balancing test. <u>Id</u>. In the case <u>sub judice</u>, the defendant, at trial, conceded that the speech involved a matter of public concern. Thus, the Court must now engage in the <u>Pickering</u> balancing test.

Generally, the Court in <u>Pickering</u> held that speech is protected by the First Amendment when the interests of the employee "as a citizen in commenting upon matters of public concern" outweigh the interests of the state "as an employer, in promoting the efficiency of the public services it performs through its employees." <u>Pickering</u>, 391 U.S. at 568, 88 S. Ct. 1731. In

---

[2] One of the given jury instructions stated, "If you find Sheriff Johnson's motivation for firing the plaintiff was to retaliate against her because of the content of her communication with the attorney rather than the circumstances under which she said it – that is, because of *what* she said rather than the circumstances under which she said it – then her firing may have been in violation of her [F]irst [A]mendment right to free speech. In order to prevail on her claim, the plaintiff must prove by a preponderance of the evidence that the content of her speech – as opposed to the circumstances of her speaking to the attorney in violation of the department policy – was a substantial or motivating factor in the decision to discharge the plaintiff from employment." (emphasis in original). Thus, the jury found she was terminated based on the content of her speech.

interpreting Pickering, the Fifth Circuit Court of Appeals specifically noted that the Court is to consider,

> (1) the degree to which the employee's activity involved a matter of public concern; (2) the time, place, and manner of the employee's activity; (3) whether close working relationships are essential to fulfilling the employee's public responsibilities and the potential effect of the employee's activity on those relationships; (4) whether the employee's activity may be characterized as hostile, abusive, or insubordinate; (5) whether the activity impairs discipline by superiors or harmony among coworkers.

Jordan, 516 F.3d at 299 (quoting Brady v. Fort Bend County, 145 F.3d 691, 707 (5th Cir. 1998)). The government has the ultimate burden of proving that its interest outweighs the employee's interest. U.S. Dep't of Justice v. FLRA, 955 F.2d 998, 1005 n. 7 (5th Cir. 1992) (en banc). "The state's burden in justifying a particular discharge varies depending upon the nature of the employee's expression." Connick v. Myers, 461 U.S. 138, 142, 103 S. Ct. 1684, 75 L. Ed. 2d 708 (1983) (quoting Pickering, 391 U.S. at 568, 88 S. Ct. 1737). Furthermore, "[t]he more central a matter of public concern the speech at issue, the stronger the employer's showing of counter-balancing governmental interest must be." FLRA, 955 F.2d at 1006 (quoting Coughlin v. Lee, 946 F.2d 1152, 1157 (5th Cir. 1991)).

The interest in this case tips in favor of the plaintiff. See Jordan, 516 F.3d at 299 (holding that plaintiff's interest in free speech outweighed defendant's interest in promoting the efficiency of the public service). Plaintiff's motive in reporting the conduct which she perceived first hand was to protect Waites' life and prevent further harm. Protecting human life is certainly a very important public concern. See Brawner v. City of Richardson, Texas, 855 F.2d 187, 192 (5th Cir. 1988) (noting the public interest in the disclosure of misconduct or misfeasance of a police department). Moreover, reporting criminal activity is also an important public concern. See Williams v. Riley, No. 07-60252, 2008 WL 1859818, *3 (5th Cir. Apr. 25, 2008). "It is the duty and the right, not only of every peace officer of the United States, but every citizen, to assist

5

in prosecuting, and in securing the punishment of, any breach of the peace of the United States." In Re Quarles, 158 U.S. 532, 535, 15 S. Ct. 959, 39 L. Ed. 1080 (1895). Also, "[t]here is, of course, no reason why we should encourage the citizen to conceal criminal activity of which he has knowledge." Jenkins v. Anderson, 447 U.S. 231 242 n. 5, 100 S. Ct. 2124, 65 L. Ed. 2d (1980).

Since these interests are very important, the government must show its interest is "stronger." FLRA, 955 F.2d at 1006. The Court acknowledges that "[b]ecause police departments function as paramilitary organizations charged with maintaining public safety and order, they are given more latitude in their decisions regarding discipline and personnel regulations than an ordinary government employer." Nixon v. City of Houston, 511 F.3d 494, 498 (5th Cir. 2007). However, the defendant has failed to meet its high burden of showing a "counter-balancing governmental interest" that outweighs the plaintiff's interest. Id.

The court in Brawner, applied the Pickering balancing test similarly to a law enforcement agency. 855 F.2d at 192. The case involved an employee reporting the truth about corruption in a police department. Id. at 192. The Court noted that "[t]he disclosure of misbehavior by public officials is a matter of public interest and therefore deserves constitutional protection, especially when it concerns the operation of a police department." Id. at 191-92. The Court further held that the public's interest in the disclosure or malfeasance outweighed any interest the department had in a confidential internal investigation. Id. at 192. As in Brawner, defendant's interest does not outweigh Plaintiff's interest in free speech. See Id; Salge v. Edna Indep. Sch. Dist., 411 F.3d 178, 192 (5th Cir. 2005) (employee's interest in free speech outweighed defendant's interest in efficiency of promoting public service).

Also, Plaintiff did not report the incident during working hours, and the speech did not cause any actual disruption. Further, the potential for disruption is low since she reported the incident in private on her own time, and, substantively, this communication would not likely cause a disruption in the workplace. Compare Tyler v. City of Mountain Home, Ark., 72 F.3d 568, 570 (8th Cir. 1995) (holding that government's interest outweighed plaintiff's interest where record evidence was made of disruption and disharmony) with Salge, 411 F.3d at 192 (defendant failed to prove any actual or potential disruption). In addition, similar to the finding in Brawner, no evidence of any disruption exists in this case. Brawner, 855 F.2d 187, 192. Moreover, in Brawner, the Court noted "if the allegations of internal misconduct were indeed true, [plaintiff's] statements could not have adversely affected the proper functioning of the department since the statements were made for the very reason that the department was not functioning properly . . ." Brawner, 855 F.2d at 192. In the case sub judice, the truthful reporting of the alleged incident would not adversely affect the proper functioning of that department.

In addition, the defendant has not proved how Shumpert's dissemination of the information to an attorney had a negative effect on the close working relationships that are essential to fulfilling the employee's public responsibilities between the sheriff's department and the police department. See Davis v. Ector County, Tex., 40 F.3d 777, 783 (5th Cir. 1994) (noting that a letter sent from a district attorney employee to Commissioners' Court discussing his wife's sexual harassment claim against the sheriff's department did not handicap the communication between the two offices or their working relationship). In the case sub judice, no record evidence exists of any actual or potential disharmony between the sheriff's department and the police department as a result of this incident. In sum, this activity did not cause disruption nor is there any proof that it had the potential to disrupt the workplace or working relationships.

Shumpert's activity certainly cannot be characterized as hostile or abusive.[3] As stated above, Shumpert had a good relationship with Sheriff Johnson[4], and she testified she did not want anyone to get in trouble; she just wanted to protect Waites' from harm. Also, Shumpert testified she was unaware of the policy and, therefore, was unaware she was violating it. The Court finds that her intent in reporting the incident was not masked by ill will.

In fact, Shumpert first notified her supervisor and also Major Anthony Hill of the Tupelo Police Department about the incident. Again, Hill told Shumpert to tell the truth. She then contacted councilwoman Davis who, in turn, communicated with Kimla Johnson. Kimla Johnson contacted Shumpert, and the two met and discussed the incident. Subsequently, Shumpert did not attempt to hide her meeting with the attorney from her superiors. Less than a day after she met with the attorney, she communicated the incident and what she had done to Captain Carleton. The above further evidences that Shumpert was not acting with ill will or in a hostile or abusive manner.

The Court finds that the defendant has failed to prove that the last factor - whether the activity impairs discipline by superiors or harmony among coworkers - weighs in its favor. No evidence exists that her activity impaired the discipline by superiors nor the harmony among coworkers. Notably, defendant failed to prove if or how her conduct impeded any employee morale.[5] Accordingly, the defendant has failed to prove that the last factor weighed in its favor.[6]

---

[3] In fact, Shumpert testified she was friends with the sheriff. Furthermore, after working for the sheriff, Shumpert moved to Texas for a period of time. Subsequently, the sheriff re-hired Shumpert when she moved back to Mississippi.

[4] Sheriff Johnson testified at trial that Shumpert was a really good employee. It is undisputed that Shumpert had never been disciplined by the Sheriff Johnson. It is undisputed that before this incident Shumpert had a good working relationship with Sheriff Johnson.

[5] Sheriff Johnson testified that he could not say that her activity adversely affected morale. When asked, "could it not adversely affect the department for you to fire a good employee for a first offense, say people that have friends she works with, couldn't that adversely affect morale," Johnson responded, "Sure."

*CONCLUSION*

Defendant conceded at trial that Shumpert's speech involved a matter of public concern. The jury found that Shumpert was fired for the content of her speech. This Court holds that the Pickering balancing test tips in favor of the plaintiff. Shumpert's interest in reporting such conduct is an important public concern. The plaintiff's interest in her First Amendment right to free speech outweighs the defendant's interest in efficient operations. Furthermore, the defendant has not proffered any evidence that Shumpert's activity caused or had the potential to cause disruption in the workplace or with working relationships. Shumpert's activity cannot be characterized as hostile or abusive. Lastly, the defendant failed to prove that Shumpert's activity impairs discipline by superiors or harmony among coworkers. Accordingly, the Court finds that Shumpert's interest in free speech outweighs the defendant's interest, and therefore, the Court adopts the jury's verdict of $34,000 in favor of the Plaintiff.

So **ORDERED**, this the 19th day of December, 2008.

**/s/ Sharion Aycock**
**U.S. DISTRICT COURT JUDGE**

---

[6] The Court notes that this last factor is less applicable to these set of facts since Shumpert was fired only days after the meeting with the attorney. Nonetheless, defendant failed to prove how its interest outweighed the Plaintiff's interest.